IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs June 19, 2002

## JAMES LAWRENCE FEENIN v. STATE OF TENNESSEE

**Direct Appeal from the Criminal Court for Davidson County**
**No. 99-C-1734     Steve R. Dozier, Judge**

---

**No. M2001-02277-CCA-R3-PC - Filed July 9, 2002**

---

The Petitioner pleaded guilty to one count each of especially aggravated kidnapping and aggravated rape. The trial court sentenced the Petitioner to nineteen years incarceration on each count, to be served concurrently. The Petitioner subsequently filed a petition for post-conviction relief, alleging that he received ineffective assistance of counsel and that his guilty pleas were not entered knowingly and voluntarily. The post-conviction court denied relief, and the Petitioner now appeals. Concluding that the Petitioner received effective assistance of counsel and that the Petitioner entered his guilty pleas voluntarily, knowingly, and intelligently, we affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

ROBERT W. WEDEMEYER, J., delivered the opinion of the court, in which DAVID G. HAYES and ALAN E. GLENN, JJ., joined.

Dwight E. Scott, Nashville, Tennessee, for the Appellant, James Lawrence Feenin.

Paul G. Summers, Attorney General and Reporter; Helena Walton Yarbrough, Assistant Attorney General; Victor S. Johnson, III, District Attorney General; and Brian Holmgren, Assistant District Attorney General, for the Appellee, State of Tennessee.

**OPINION**

The Petitioner, James L. Feenin, pleaded guilty to one count of especially aggravated kidnapping and to one count of aggravated rape. Pursuant to a negotiated plea agreement, the trial court sentenced the Petitioner to nineteen years incarceration for each count and ordered that the sentences be served concurrently. The Petitioner subsequently filed a pro se petition for post-conviction relief. Counsel was appointed to represent the Petitioner in the post-conviction proceedings, and an amended petition was filed. The trial court conducted a hearing and issued an order denying the petition for post-conviction relief, and this appeal ensued.

The Petitioner contends on appeal that he received ineffective assistance of counsel at the time he entered his guilty pleas and that, as a result, his guilty pleas were not knowingly and voluntarily entered. Specifically, he challenges the adequacy of counsel's investigation into the accuracy of potential DNA evidence. The Petitioner alleges that counsel failed to obtain (1) copies of the Tennessee Bureau of Investigation forensic DNA case file, including notes and forms documenting the results of the testing; (2) statistical calculations made to reach the frequencies reported with the DNA results; (3) copies of the electropherograms generated in the DNA analysis; and (4) a copy of the technical protocols and frequency databases utilized in the analysis of this case. Having reviewed the record in this case, we conclude that the Petitioner was not denied effective assistance of counsel at the time he entered his guilty pleas and that his guilty pleas were entered knowingly, intelligently, and voluntarily. Therefore, we affirm the judgment of the trial court.

## I. FACTUAL BACKGROUND

### A. PLEA AGREEMENT

The transcript of the Petitioner's guilty plea reflects his agreement as to the accuracy of the following allegations: On July 16, 1998, Linda Parker, the victim in this case, went shopping at a Wal-Mart located at Charlotte and Old Hickory Boulevard in Nashville, Davidson County, Tennessee. As she returned to her car, the Petitioner approached her. Brandishing a gun, he entered the victim's car and ordered her to drive to various locations throughout Davidson County. Eventually, the Petitioner had the victim park the car behind a store. He ordered her into the back seat, removed her clothing, and raped her. After the rape, the Petitioner drove the victim's vehicle back to Wal-Mart and left her bound and gagged in the car, from which she was later able to escape.

### B. POST-CONVICTION HEARING

At the post-conviction hearing, the Petitioner presented the testimony of Sergeant Phillip Sage and Officer Kenneth Sutherland, who described in general terms the physical evidence that was discovered in this case and the procedures used in processing that evidence. This testimony revealed that as part of the State's investigation, a Medical Legal Examination (MLE) was performed on the victim. A vaginal swab from the MLE revealed both semen and sperm. The victim explained that she had engaged in consensual sex with her husband the night before the rape. The only DNA evidence obtained from the MLE was that of the victim. An examination of the victim's vehicle yielded a fingerprint on the outside of the car and semen stains in the back seat. The fingerprint was examined by the Tennessee Bureau of Investigation's Crime Lab and was found to be a match with the Petitioner. The seat covers were not initially tested for DNA evidence, but were instead stored in a warehouse.

Although the victim was unable to identify the Petitioner in a lineup, the fingerprint identification provided grounds for an arrest. A warrant was then issued for a sample of the Petitioner's blood to be tested against the DNA samples removed from the crime scene. Initially,

DNA tests were performed on a vaginal swab obtained during the victim's MLE and on articles of the victim's clothing.

At the time of the post-conviction proceedings in this case, defense counsel had been practicing law with the Metro Davidson County Public Defender's Office for approximately thirteen years. At the post-conviction hearing, counsel stated that she had investigated the Petitioner's case thoroughly and discussed several defenses with him. Counsel testified that after she was appointed to the case, she learned that at a lineup conducted prior to her appointment, the victim was unable to identify the Petitioner. However, she stated fingerprints lifted from the victim's vehicle matched those of the Petitioner. Counsel stated that she investigated how many fingerprint matches had been found. She learned that twenty-one or twenty-two prints found on the victim's vehicle matched one of the Petitioner's fingerprints and that other prints matched fingerprints from two of the Petitioner's other fingers.

Defense counsel testified that the Petitioner refused a blood test after the crime, and law enforcement officials therefore obtained a search warrant for a sample of the Petitioner's blood. Counsel stated that she did not challenge the search warrant because she saw no grounds to support such a challenge. She reported, however, that she did file a motion to suppress statements made by the Petitioner in an interview with police officers. She stated that the trial court denied the motion, refusing to redact portions of the Petitioner's statement in which he discussed sexual encounters with two women other than the victim in this case who were also unknown to him.

The Petitioner told counsel that he could not have deposited the sperm found during the MLE because he had had a vasectomy ten years earlier and was unable to produce sperm. In an effort to utilize this possible defense, counsel made an ex parte motion requesting funds to have the Petitioner examined, and the trial court granted the motion. Defense counsel stated that she obtained the ex parte orders to avoid disclosing to the State her theory of the case. The examination confirmed that the Petitioner was unable to produce sperm. However, defense counsel was aware that the victim told the physicians who performed the MLE that she had engaged in consensual intercourse with her husband on the night before the rape. She stated that she did not request a separate DNA test for the victim's husband because the victim's consensual partner was likely the source of the sperm.

Defense counsel further testified that she had been involved in fifteen to twenty cases involving DNA evidence and that she had a fundamental understanding of the subject matter. Defense counsel reported that upon the Petitioner's request, she recommended that the stains found on the seat covers be compared to the Petitioner's DNA sample. Defense counsel advised the Petitioner that if the sample were a match, it would be strong evidence against him. While some tests were inconclusive, one of the seat cover samples matched the Petitioner's DNA profile. Defense counsel specified that only one in 546,000,000 people would have had such a DNA profile. Defense counsel testified that once the Petitioner's DNA was recovered from the seat covers, she no longer believed the case to be "triable." She explained, "I did not feel that [this] would be a triable case, since we would be arguing that this woman, who was in her fifties and married and a schoolteacher, happened to go to WalMart one afternoon and willingly engaged in intercourse in her

car with a stranger. . . . I just did not think that we could convince a jury." Counsel advised the Petitioner that the DNA match, coupled with the fingerprint evidence and the Petitioner's statements to police that he had sexual encounters with two different unknown women, would probably lead to his conviction. Defense counsel did not challenge the DNA evidence or subject it to peer review because she "had no reason to think that the results would be different."

Defense counsel testified that although the Petitioner never admitted his guilt to her, he decided that it was in his best interest to submit a guilty plea. Counsel reported that she believed the plea agreement that she obtained on behalf of the Petitioner was one year less than the presumptive sentence. She stated that she engaged in much negotiation for the plea agreement and believed it to be a good agreement. However, counsel testified that she informed the Petitioner that he faced possible consecutive sentencing.

The Petitioner maintained that he did not rape the victim in this case. He testified that defense counsel visited him approximately six times, "maybe a couple more," to discuss his case. He stated that they discussed items obtained through discovery. The Petitioner claimed that the "time frame" surrounding the crime "didn't really add up." He testified that defense counsel told him that she could argue that the encounter between the Petitioner and the victim was consensual. He also maintained that he initially wished to proceed to trial, but he admitted that he changed his mind after learning that there had been a positive DNA match.

The Petitioner denied being informed prior to his plea of any DNA tests that were found "inconclusive." He stated that after he entered his plea, he requested that defense counsel forward him a copy of all DNA reports in his case, and when he received the materials, he learned for the first time that some tests were inconclusive. He insisted that had he been informed of the inconclusive tests, he would not have pled guilty. The Petitioner further complained that his attorney did not sufficiently explain DNA analysis to him.

The Petitioner testified that he did not recall discussing with his attorney whether she should request tests on the seat covers from the victim's car. He could not recall whether he and his attorney discussed having independent DNA testing performed on items recovered as evidence in his case; he stated that he did not recall defense counsel "explaining to [him] that [he] had that option."

The Petitioner maintained that he did not feel that he was fully apprised of all of the facts of the case when he entered his plea of guilty, and he stated that he therefore did not enter his plea knowingly. He stated that on the date of his plea, he was "scared and ignorant." Nevertheless, he stated that when he entered his plea, he believed that it was in the best interest of his family. The Petitioner admitted that upon entering his pleas, he stated that he understood the charges against him and the consequences of pleading guilty. The Petitioner also admitted that when he entered his plea, he stated that the charges were true and offered an apology for the crimes. However, he maintained that he apologized to the victim only because he felt he had to apologize in order to receive a

sentence of nineteen years. He admitted that his attorney did not "le[a]d him" to offer an apology or to lie in court.

## II. ANALYSIS

In his petition for post-conviction relief, the Petitioner argues that his trial counsel was ineffective and that as a result, his guilty pleas were not knowingly and voluntarily entered. The Petitioner claims that he was ready to go to trial, but changed his mind when he was confronted with the DNA evidence. The Petitioner claims that his defense counsel presented him with only the positive results, not the inconclusive ones. He maintains that had he known about the inconclusive results, he would not have pled guilty, but proceeded to trial. The Petitioner also argues that defense counsel should have subjected the DNA evidence to independent analysis.

In order to obtain post-conviction relief, a petitioner must show that his or her conviction or sentence is void or voidable because of the abridgment of a constitutional right. Tenn. Code Ann. § 40-30-203. The petitioner bears the burden of proving factual allegations in the petition for post-conviction relief by clear and convincing evidence. Id. § 40-30-210(f). A post-conviction court's factual findings are subject to a de novo review by this Court; however, we must accord these factual findings a presumption of correctness, which is overcome only when a preponderance of the evidence is contrary to the post-conviction court's factual findings. Fields v. State, 40 S.W.3d 450, 456 (Tenn. 2001). A post-conviction court's conclusions of law are subject to a purely de novo review by this Court, with no presumption of correctness. Id. at 457. The Tennessee Supreme Court has held that the issue of ineffective assistance of counsel is a mixed question of law and fact and, as such, is subject to de novo review. State v. Burns, 6 S.W.3d 453, 461 (Tenn. 1999).

The right of a criminally accused to representation is guaranteed by both the Sixth Amendment to the United States Constitution and Article I, Section 9 of the Tennessee Constitution. Id.; Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975). This right to representation includes the right to "reasonably effective" assistance. Burns, 6 S.W.3d at 461. In reviewing a claim of ineffective assistance of counsel, this Court must determine whether the advice given or services rendered by the attorney are within the range of competence demanded of attorneys in criminal cases. Baxter, 523 S.W.2d at 936. To prevail on a claim of ineffective assistance of counsel, a petitioner must show that "counsel's representation fell below an objective standard of reasonableness," Strickland v. Washington, 466 U.S. 668, 688 (1984), and that this performance prejudiced the defense, resulting in a failure to produce a reliable result. Id. at 687; Cooper v. State, 849 S.W.2d 744, 747 (Tenn. 1993). To satisfy the requirement of prejudice, a petitioner must show a reasonable probability that, but for counsel's unreasonable error, the fact finder would have had reasonable doubt regarding the petitioner's guilt. Strickland, 466 U.S. at 695. This reasonable probability must be "sufficient to undermine confidence in the outcome." Id. at 694; see also Harris v. State, 875 S.W.2d 662, 665 (Tenn. 1994).

When evaluating an ineffective assistance of counsel claim, the reviewing court should judge the attorney's performance within the context of the case as a whole, taking into account all relevant circumstances. Strickland, 466 U.S. at 690; State v. Mitchell, 753 S.W.2d 148, 149 (Tenn. Crim.

App. 1988). The reviewing court must evaluate the questionable conduct from the attorney's perspective at the time. Strickland, 466 U.S. at 690; Cooper, 849 S.W.2d at 746; Hellard v. State, 629 S.W.2d 4, 9 (Tenn. 1982). In doing so, the reviewing court must be highly deferential and "should indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Burns, 6 S.W.3d at 462. Counsel should not be deemed to have been ineffective merely because a different procedure or strategy might have produced a different result. Williams v. State, 599 S.W.2d 276, 279-80 (Tenn. Crim. App. 1980).

This standard also applies to claims arising out of the plea process. Hill v. Lockhart, 474 U.S. 52, 58 (1985). To satisfy the requirement of prejudice in a case involving a guilty plea, the petitioner must demonstrate a reasonable probability that, but for counsel's errors, he or she "would not have pleaded guilty and would have insisted on going to trial." Id. at 59.

There must be an affirmative showing in the record that a guilty plea was voluntarily, intelligently, and knowingly given before it was be accepted. See Boykin v. Alabama, 395 U.S. 238, 242 (1969); State v. Pettus, 986 S.W.2d 540, 542 (Tenn. 1999). Moreover, the defendant must be made aware of the significant consequences of such a plea. Pettus, 986 S.W.2d at 542; Blankenship v. State, 858 S.W.2d 897, 904 (Tenn. 1993). A plea is not voluntary if it results from ignorance, misunderstanding, coercion, inducements, or threats. Blankenship, 858 S.W.2d at 904. The issue is whether the pleas represented a voluntary and intelligent choice among the alternative courses of action open to the defendant. North Carolina v. Alford, 400 U.S. 25, 31 (1970).

In the present case, the post-conviction court concluded that the appellant received the competent assistance of counsel and that he consequently entered his pleas knowingly and voluntarily. The trial court made the following findings concerning the Petitioner's guilty plea:

> [T]he Court finds that the trial court asked the [P]etitioner whether he had any defenses and/or any other matters that he wished to raise that he had not been able to raise or discuss with trial counsel. The [P]etitioner was also advised that he could have a jury trial in his case. The transcript reflects that the [P]etitioner answered that he had an opportunity to fully discuss his case with [counsel]. The transcript further reflects that the [P]etitioner acknowledged his understanding of his right to a jury trial and further acknowledged that he was aware that he was waiving that right.
>
> The transcript also reflects that a factual basis for the plea was read into the record by the State. The [P]etitioner clearly acknowledged that the set of facts given by the State were true and correct and he also extended his apologies to the victim. The record is clear that the plea of guilty was entered knowingly and voluntarily by the [P]etitioner. The Court finds that there is no evidence in the record to indicate that trial counsel's performance resulted in prejudice to [P]etitioner.

The trial court also concluded that "the [P]etitioner has not carried his burden concerning any further action that should have been taken by trial counsel regarding the DNA evidence." As the court observed, the Petitioner did not dispute that his DNA matched the sample taken from the victim's vehicle, but only took issue with the number of inconclusive results obtained before the match was found.

After a thorough review of the record, we conclude that the preponderance of the evidence is not contrary to the post-conviction court's findings of fact. We agree with the post-conviction court that defense counsel conducted a sufficient investigation of the proof against the Petitioner and that the Petitioner has failed to demonstrate that additional appropriate action should have been taken by trial counsel regarding DNA evidence. Defense counsel testified that she had a fundamental understanding of DNA testing and had no reason to believe that an independent analysis would produce different results.

Furthermore, the Petitioner has failed to prove that counsel's representation fell below an objective standard of reasonableness. Counsel's performance was well within the range of competence demanded of attorneys in criminal cases. The Petitioner has failed to prove that he received ineffective assistance of counsel in this case. Furthermore, we have concluded from our de novo review that the Petitioner entered his pleas voluntarily, knowingly, and intelligently.

Accordingly, we AFFIRM the judgment of the post-conviction court.

_____
ROBERT W. WEDEMEYER, JUDGE